**UNITED STATES BANKRUPTCY COURT**

**Delaware**

| | | |
|---|---|---|
| <u>In re</u> | ) | **Chapter 11** |
| | ) | |
| **Hexion Holdings LLC, et al.,** | ) | **Case No 19-10684** |
| **Debtors.** | ) | **(Jointly Administered)** |
| | ) | |

**SCHEDULES OF ASSETS AND LIABILITIES FOR**

**North American Sugar Industries Incorporated**

**Case No: 19-10695**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HEXION HOLDINGS LLC, et al., [1] | ) | Case No. 19-10684 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## GLOBAL NOTES AND STATEMENTS OF LIMITATION, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

**General**

The Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") filed by Hexion Holdings LLC ("Hexion" or the "Company") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (the "Debtors") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") were prepared, pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), by management of the Debtors, with the assistance of the Debtors' advisors.

Although the Debtors' management has made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances, based on information available at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements, and inadvertent errors, inaccuracies, or omissions may have occurred. Notwithstanding any subsequent information or discovery, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Schedules and Statements are unaudited and subject to potential adjustment. Because the Schedules and Statements contain unaudited information and remain subject to further review, verification, and potential adjustment, there can be no assurance that these Schedules and Statements are complete. Nothing contained in the Schedules and Statements shall constitute a waiver of any right of the Debtors or an admission with respect to their chapter 11 cases (including,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Hexion Holdings LLC (6842); Hexion LLC (8090); Hexion Inc. (1250); Lawter International Inc. (0818); Hexion CI Holding Company (China) LLC (7441); Hexion Nimbus Inc. (4409); Hexion Nimbus Asset Holdings LLC (4409); Hexion Deer Park LLC (8302); Hexion VAD LLC (6340); Hexion 2 U.S. Finance Corp. (2643); Hexion HSM Holdings LLC (7131); Hexion Investments Inc. (0359); Hexion International Inc. (3048); North American Sugar Industries Incorporated (9735); Cuban-American Mercantile Corporation (9734); The West India Company (2288); NL Coop Holdings LLC (0696); and Hexion Nova Scotia Finance, ULC (N/A). The address of the Debtors' corporate headquarters is 180 East Broad Street, Columbus, Ohio 43215.

but not limited to, issues involving claims, substantive consolidation, defenses, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers), and the Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, but not limited to, the right to dispute or otherwise assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

The Schedules and Statements have been signed by George F. Knight, Chief Financial Officer of the Debtors and authorized agent of each of the Debtors.  Accordingly, in reviewing and signing the Schedules and Statements, Mr. Knight necessarily relied upon the efforts, statements, and representations of the Debtors' other personnel and professionals.  Mr. Knight has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

The Schedules and Global Notes (as defined below) should not be relied upon by any persons for information relating to current or future financial conditions, events, or performances of the Debtors.

These Global Notes and Statements of Limitation, Methodology, and Disclaimers Regarding the Debtors' Schedules and Statements (the "Global Notes") are incorporated by reference in, and comprise an integral part of, all of the Schedules and Statements, and should be referred to and considered in connection with any review of the Schedules and Statements.[2]

**Description of the Cases and Reporting Date**

On April 1, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The chapter 11 cases are being jointly administered under Case No. 19-10684.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   The asset and liability information provided herein, except as otherwise noted, represents the asset and liability data of the Debtors as of March 31, 2019 (the "Reporting Date").

**Basis of Presentation**

Hexion Holdings LLC is the sole owner of Hexion LLC, a holding company, which is the direct parent of Hexion Inc.  Hexion Inc. is the direct or indirect parent of all of the other Debtors in these cases as well as the Non-Debtor Affiliates, and prepares consolidated financial statements

---

[2]     These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements.  The fact that the Debtors have prepared a Global Note with respect to any of individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.  Disclosure of information in one Schedule, one Statement, or an exhibit or attachment to a Schedule or Statement, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, Statement, exhibit, or attachment.

US-DOCS\107895664.1

that are audited annually. Combining the assets and liabilities set forth in the Debtors' Schedules and Statements would result in amounts that would be substantially different from financial information that would be prepared on a consolidated basis under Generally Accepted Accounting Principles ("GAAP"). Therefore, these Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP nor are they intended to fully reconcile to the financial statements prepared by the Debtors. Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor, except where otherwise indicated. Information contained in the Schedules and Statements has been derived from the Debtors' books and records.

Moreover, given, among other things, the uncertainty surrounding the collection and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, this is not an admission that the Debtor was solvent as of the Petition Date or at any time prior to the Petition Date. Likewise, to the extent a Debtor shows more liabilities than assets, this is not an admission that the Debtor was insolvent at the Petition Date or any time prior to the Petition Date.

**Amendment**

While reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and/or supplement the Schedules and Statements from time to time as is necessary or appropriate.

## General Disclosures Applicable to Schedules and Statements

1.     **Causes of Action**.  Despite their reasonable efforts to identify all known assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements. The Debtors reserve all of their rights with respect to any claims or causes of action and neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claims or causes of actions or in any way prejudice or impair the assertion of such claims.

2.     **Recharacterization**.   The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements. However, the Debtors may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all of their rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate.

3.     **Claim Designations**.   Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtors that such claim or amount is not "contingent," "unliquidated," or "disputed." The Debtors reserve all of their rights to dispute, and to assert setoff rights, counterclaims, and defenses to any claim reflected on their Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, and classification, and to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed." Moreover, the Debtors reserve all of their

rights to amend their Schedules and Statements as necessary and appropriate. Listing a claim does not constitute an admission of liability by the Debtors.

4. **Unliquidated Claim Amounts**. Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

5. **Undetermined Amounts.** The description of an amount as "undetermined" is not intended to reflect upon the materiality of such amount.

6. **Court Orders.** Pursuant to certain orders of the Bankruptcy Court entered in the Debtors' chapter 11 cases entered on or about April 2, 2019 and May 1, 2019 (collectively, the "First Day Orders"), the Debtors were authorized (but not directed) to pay, among other things, certain prepetition claims of employees, critical vendors, and taxing authorities. Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore generally are not listed in the Schedules and Statements. Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtors reserve all rights to amend or supplement their Schedules and Statements as is necessary or appropriate.

7. **Valuation**. In many instances, current market valuations are not maintained by or readily available to, the Debtors. It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain current market valuations of all of their assets. Accordingly, unless otherwise indicated, net book values as of the [Reporting Date] are reflected on the Schedules and Statements. Exceptions to this include operating cash, cash equivalents, and certain other assets. Operating cash is presented as bank balances as of the [Petition Date]. Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may vary materially from fair market values. Amounts ultimately realized may vary from net book value (or other value so ascribed) and such variance may be material. Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

8. **Liabilities.** The Debtors have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend the Schedules and Statements as they deem appropriate in this regard.

9. **Excluded Assets and Liabilities**. The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules and Statements. The Debtors have excluded certain categories of assets, goodwill, tax accruals, and liabilities from the Schedules and Statements, including, accrued salaries, employee benefit accruals, accrued accounts payable, and deferred gains. The Debtors also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may be rejected

US-DOCS\107895664.1

(if any), to the extent such damage claims exist.  In addition, certain immaterial assets and liabilities may have been excluded.

10.    **Confidential or Sensitive Information**.  There may be instances where certain information in the Schedules and Statements was not included or redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual.

11.    **Leases**.  The Debtors have not included in the Schedules and Statements the future obligations of any operating leases.  Additionally, the Debtors have not included in the Schedules any right-of-use operating lease assets or liabilities related to FASB Accounting Standards Update 2016-2 because the Debtors do not possess any ownership interest in the corresponding properties and believe that the addition of these items would be cumbersome and unnecessary for understanding the value of the Debtors' estate.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule E/F of the Schedules.

12.    **Contingent Assets**.  The Debtors believe that they may possess certain claims and causes of action against various parties. Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws.  The Debtors, despite reasonable efforts, may not have set forth all of their causes of action against third parties as assets in their Schedules and Statements. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or causes of action or in any way prejudice or impair the assertion of such claims.

The Debtors may also possess contingent and unliquidated claims against affiliate entities for various financial accommodations and similar benefits they have extended from time to time, including contingent and unliquidated claims for contribution, reimbursement, and/or indemnification arising from, among other things, (i) letters of credit, (ii) notes payable and receivable, (iii) surety bonds, (iv) guarantees, (v) indemnities, and (vi) warranties.  Additionally, prior to the relevant Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.  Refer to each Statement, item 4(a)(i), for lawsuits commenced prior to the relevant Petition Date in which the Debtor was a plaintiff.

13.    **Receivables**.  The Debtors have not listed individual customer accounts receivable balance information as the Company considers its customer list to be proprietary and confidential.

14.    **Inventories**.  Inventories are stated at lower of cost or net realizable value using the first-in, first-out method. Costs include direct material, direct labor and applicable manufacturing overheads, which are based on normal production capacity. Abnormal manufacturing costs are recognized as period costs and fixed manufacturing overheads are allocated based on normal production capacity. An allowance is provided for excess and obsolete inventories based on management's review of inventories on-hand compared to estimated future usage and sales.  All inventories are presented without consideration of any mechanics' liens.

15.    **Intercompany Accounts**.  The Debtors record intercompany assets and liabilities through three types of accounts: intercompany trade (includes trade and other business-related transactions), intercompany notes and intercompany dividends. Intercompany trade accounts record sales-type transactions between Hexion subsidiaries and affiliates. Intercompany notes reflect loans made between Hexion subsidiaries and affiliates. Intercompany interest includes interest accrued up through the Reporting Date. Periodically, the Debtors eliminated intra-company activity within each legal entity. For additional information regarding the Debtors' intercompany transactions and related cash management protocols, see (i) *Debtors' Motion For Entry Of Interim And Final Orders (I) Authorizing Continued Use Of The Debtors' Existing Cash Management System And Bank Accounts, (II) Waiving Certain United States Trustee Requirements, (III) Authorizing Continued Performance Of Intercompany Transactions, And (IV) Granting Related Relief* (Docket No. 15) (the "Cash Management Motion") and (ii) *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Adequate Protection to Prepetition Secured Parties, (II) Scheduling a Final Hearing, and (III) Granting Related Relief* (Docket No. 62).

16.    **Guarantees and Other Secondary Liability Claims**.  The Debtors have used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in their executory contracts, unexpired leases, secured financings, debt instruments, and other agreements.  Where such Guarantees have been identified, they have been included in the relevant Schedule H for the Debtor or Debtors affected by such Guarantees. However, certain Guarantees embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements may have been inadvertently omitted. Thus, the Debtors reserve all rights to amend the Schedules and Statements to the extent that additional Guarantees are identified and to remove any Guarantee that was included in error.

17.    **Intellectual Property Rights**.  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. The Debtors have made every effort to attribute intellectual property to the rightful Debtor owner, however, in some instances, intellectual property owned by one Debtor may, in fact, be owned by another.  Accordingly, the Debtors reserve all of their rights with respect to the legal status of any and all intellectual property rights.

18.    **Executory Contracts**.  The Debtors have not set forth executory contracts as assets in the Schedules and Statements.  The Debtors' executory contracts have been set forth in Schedule G.  In addition, the business of the Debtors are complex—the Debtors have made diligent attempts to properly identify all executory contracts and unexpired leases, but inadvertent errors, omissions, or over inclusion may have occurred.

19. **Mechanics' Liens**. The inventories, property, and equipment listed in the Statements and Schedules are presented without consideration of any asserted mechanics', materialmen, or similar liens.

20. **Estimates**. To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities. The Debtors reserve all rights to amend the reported amounts of assets and liability to reflect changes in those estimates or assumptions.

21. **Fiscal Year**. Each Debtor's fiscal year ends on December 31.

22. **Currency**. Unless otherwise indicated, all amounts are reflected in U.S. dollars.

23. **Property and Equipment**. Unless otherwise indicated, owned property (including real property) and equipment are stated at net book value. The Debtors may lease furniture, fixtures, and equipment from certain third party lessors. Any such leases are set forth in the Schedules and Statements. Nothing in the Schedules and Statements is or should be construed as an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to same.

24. **Claims of Third-Party Related Entities**. While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to such parties. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered disputed, whether or not they are designated as such.

25. **Interest in Subsidiaries and Affiliates**. Hexion Holdings LLC is the sole member of Hexion LLC, which is the sole owner of Hexion Inc. Hexion Inc. owns directly or indirectly all of the equity interest in the 15 subsidiaries and affiliates that are also Debtors as well as numerous subsidiaries and affiliates who are not Debtors. Interests in subsidiaries arise from stock ownership. Each Debtor's Schedule A/B 15 or Statement 25 schedules its ownership interests, if any, in subsidiaries and affiliates. Assets such as investments in subsidiaries are listed as undetermined amounts as of the Petition Date because the book values may materially differ from fair market values.

26. **Umbrella or Master Agreements**. Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements of only the Debtor that signed the original umbrella or master agreement.

27. **Setoffs and Recoupment**. The Debtors routinely take and are subject to setoffs with customers and vendors in the ordinary course of business. Setoffs in the ordinary course can result from various items including, but not limited to, intercompany transactions, pricing discrepancies, returns, refunds, warranties, and other disputes between the Debtors and their customers or vendors. These setoffs are consistent with the ordinary course of business in the

7

Debtors' industry and can be particularly voluminous, unduly burdensome and costly for the Debtors to regularly document. Therefore, the economic impact of claims related to setoff and recoupment are excluded from the Debtors' responses to Question 6 of the Statement of Financial Affairs.

28.    **Insiders**.  The Debtors have attempted to include all payments made over the 12 months preceding the Petition Date to any individual or entity deemed an "insider." For these purposes, "insider" is defined as (1) an individual or entity owning 5% or more of the voting or equity securities of a Debtor, (2) directors of any of the Debtors, (3) the Debtors' executive officers as stated in Hexion Inc. SEC Form 10-K, or (4) a person married to any of the foregoing. The listing of a party as an "insider," however, is not intended to be nor should be construed as a legal characterization of such party as an insider and does not act as an admission of any fact, claim, right, or defense, and all such rights, claims, and defenses are hereby expressly reserved.  In addition, certain Debtors have made payments to, charged or incurred charges from various affiliated entities during the twelve months preceding the relevant Petition Date.  These transactions have been reflected in the Schedules and Statements as the net change in beginning and ending intercompany trade payables.

29.    **Indemnification**.  Section 19 of Hexion's Amended and Restated Operating Agreement (the "Operating Agreement") provides indemnification, on the particular terms set forth in the Bylaws, for persons made a party or threatened to be made a party to any action, suit or proceeding by reason of the fact that he or she is a director of Hexion, or is serving at the request of Hexion as a director.  The Debtors have not reached a determination as to whether certain potentially indemnified persons are ineligible for indemnification under the terms of the Certificate and such persons are therefore listed on Hexion's Schedule E/F.  To the extent that Hexion has entered into separate contracts with certain executives and former executives, agreeing to indemnify them in certain circumstances according to the particular terms and conditions set forth in those contracts, such contracts are listed on Hexion's Schedule G.  The Debtors have not reached a determination as to whether the persons who are parties to these contracts are eligible for indemnification.  Consequently, the Debtors have separately listed on Schedule G all contracts with such persons, but Debtors reserve all rights with respect thereto, including the right to assert that the individual is not entitled to indemnification and that the provisions do not constitute executory contracts.

30.    **Property Held for Others**.  In the ordinary course of business, Hexion enters into tolling agreements (the "Tolling Agreements") with certain customers of the Debtors.  Under the Tolling Agreements, the Debtors take possession but not title to various materials and supplies (the "Tolling Assets").  Title to the Tolling Assets does not transfer to the Debtors and the Debtors are not obligated to pay for the Tolling Assets.   As a result, the Debtors have listed any property held for another in Statement 21.

31.    **Payments**.  The financial affairs and business of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses (the "Cash Management System") (as described in the Cash Management Motion).  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve the right to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, as is necessary or appropriate.

Payments made are listed by the legal entity making such payment notwithstanding that many such payments will have been made on behalf of another legal entity.

32.    **Totals**.  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.  To the extent a Debtor is a guarantor of debt held by another Debtor, the amounts reflected in these Schedules are inclusive of each Debtor's guarantor obligations.

**Specific Notes Regarding Schedule A/B**

1.    **Schedule A/B-3 - Checking, savings, or other financial accounts, CDs, etc.** Schedule A/B-3 lists closing bank balances as of March 31, 2019.

2.    **Schedule A/B-15 – Stock and interests in incorporated and unincorporated businesses**.  See Schedule Exhibit A/B-15 for additional businesses the Debtor was a parent of or owned a significant interest in.

3.    **Schedule A/B-39 - Office Equipment**.  Certain of the Debtors' office equipment, furnishings, and supplies are not capitalized based on its accounting policies and procedures. These assets are not listed herein.

4.    **Schedule A/B-40 / A/B-50 - Business Equipment and Spare Parts**.  Certain of the Debtors' machinery, fixtures, equipment, and supplies used in business are not capitalized based on its accounting policies and procedures. These assets are not listed herein.

**Specific Notes Regarding Schedule D**

Except as otherwise agreed pursuant to a stipulation or agreed order or general order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D of any Debtor. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument (including, without limitation, any intercompany agreement) related to such creditor's claim. Further, while the Debtors have included the results of Uniform Commercial Code searches, the listing of such results is not nor shall it be deemed an admission as to the validity of any such lien.  Conversely, the Debtors made reasonable, good faith efforts to include all liens on Schedule D, but may have inadvertently omitted to include an existing lien because of, among other things, the possibility that a lien may have been imposed after the Uniform Commercial Code searches were performed or a vendor may not have filed the requisite perfection documentation.  Moreover, the Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.  That certain Amended and Restated Asset-Based Revolving Credit Agreement, dated as of December 21, 2016 also has 16 letters of credit issued  under it that are not included in the total listed on Schedule D.  Although there are multiple parties that hold a portion of the debt, only the administrative agents have been listed for purposes of Schedule D.

US-DOCS\107895664.1

The amounts reflected outstanding under the Debtors' prepetition loan facilities reflect approximate amounts as of the Petition Date.

In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The descriptions provided in Schedule D are intended only as a summary. Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. Nothing in the Global Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements.

**Specific Notes Regarding Schedule E/F**

1.      **Creditors Holding Priority Unsecured Claims**.  The listing of any claim on Schedule E/F does not constitute an admission by the Debtors that such claim is entitled to priority treatment under sections 503 and/or 507 of the Bankruptcy Code. The Debtors reserve all rights to dispute the amount and/or the priority status of any claim on any basis at any time.

Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on the Debtors' Schedule E/F. Certain of such claims, however, may be subject to ongoing audits and/or the Debtors otherwise are unable to determine with certainty the amount of the remaining claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as unknown in amount, pending final resolution of ongoing audits or other outstanding issues.

As noted in the Global Notes, the Bankruptcy Court entered a First Day Order granting authority to the Debtors to pay certain prepetition employee wage and other obligations in the ordinary course (the "Employee Wage Order"). Pursuant to the Employee Wage Order, the Bankruptcy Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, bonuses and other compensation, reimbursable employee expenses, and employee medical and similar benefits.  The Debtors have not listed on Schedule E/F any wage or wage-related obligations for which the Debtors have been granted authority to pay pursuant to the Employee Wage Order or other order that may be entered by the Bankruptcy Court.  The Debtors believe that all such claims have been, or will be, satisfied in the ordinary course during their chapter 11 cases pursuant to the authority granted in the Employee Wage Order or such other order as may be entered by the Bankruptcy Court.

2.      **Creditors Holding Nonpriority Unsecured Claims**.  The Debtors have used their commercially reasonable efforts to list all general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' existing books and records.

Schedule E/F does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP.  Such accruals are general estimates of liabilities and do not represent specific claims as of the Petition Date.

Schedule E/F does not include certain reserves for potential unliquidated contingencies that historically were carried on the Debtors' books as of the Petition Date; such reserves were for potential liabilities only and do not represent actual liabilities as of the Petition Date.

The claims listed in Schedule E/F arose or were incurred on various dates. In certain instances, the date on which a claim arose is an open issue of fact. Determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F.

Schedule E/F contains information regarding potential and pending litigation involving the Debtors.  In certain instances, the Debtor that is the subject of the litigation is unclear or undetermined.  To the extent that litigation involving a particular Debtor has been identified, however, such information is contained in the Schedule for that Debtor.

Schedule E/F reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Except in certain limited circumstances, the Debtors have not scheduled contingent and unliquidated liabilities related to guaranty obligations on Schedule E/F.  Such guaranties are, instead, listed on Schedule H.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances.  The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

Unless the Debtors were required to pay ancillary costs, such as freight, miscellaneous fees and taxes, such costs are not included in the liabilities scheduled, as such amounts do not represent actual liabilities of the Debtor.

3.    **Schedule – Intercompany**.  The Debtors maintain business relationships among each other and with their foreign subsidiaries ("Foreign Subsidiaries") resulting in intercompany receivables and payables in the ordinary course of business.  Such Intercompany Claims arise (a) among the Debtors and (b) between Hexion and Foreign Subsidiaries pursuant to prepetition management service agreements, intercompany trade arrangements, intercompany loan agreements, and other intercompany arrangements.  The respective intercompany accounts payable and accounts receivable are listed at the net amount due to/due from the debtor as of March 31, 2019 on Schedule E/F for each Debtor.

4.    **Schedule - Trade Payables**.  Trade Payables listed on Schedule E/F contain the pre-petition liability information available to the Debtors as of the date of filing and include invoices that were paid subsequent to the Petition Date related to prepetition obligations pursuant to the *Final Order (I) Authorizing  the Debtors to Pay Prepetition Claims of Foreign Vendors and (II) Granting Related Relief* (Docket No. 280), the *Final Order (I) Authorizing the Debtors to Pay*

11

*Prepetition Claims of Critical Vendors and (II) Granting Related Relief* (Docket No. 293), and the *Final Order (I) Authorizing Payment of Prepetition Claims of Common Carriers, Warehouses, Toll Processors, Mechanics, and Freight Forwarders, (II) Authorizing Payment of Section 503(b)(9) Claims, and (III) Granting Related Relief* (Docket No. 281).

## Specific Notes Regarding Schedule G

1.     **Executory Contracts**.  While the Debtors' existing books, records, and financial systems have been relied upon to identify and schedule executory contracts at each of the Debtors, and although commercially reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or over inclusions may have occurred. The Debtors do not make, and specifically disclaim, any representation or warranty as to the completeness or accuracy of the information set forth on Schedule G. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G and to amend or supplement Schedule G as necessary. The contracts, agreements, and leases listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters, memoranda, and other documents, instruments, and agreements that may not be listed therein despite the Debtors' use of reasonable efforts to identify such documents. Further, unless otherwise specified on Schedule G, each executory contract or unexpired lease listed thereon shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without respect to whether such agreement, instrument or other document is listed thereon.

In some cases, the same supplier or provider appears multiple times on Schedule G.  This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

In the ordinary course of business, the Debtors may have issued numerous purchase orders for supplies, product, and related items which, to the extent that such purchase orders constitute executory contracts, are not listed individually on Schedule G.  To the extent that goods were delivered under purchase orders prior to the Petition Date, vendors' claims with respect to such delivered goods are included on Schedule E/F.

As a general matter, certain of the Debtors' executory contracts and unexpired leases could be included in more than one category. In those instances, one category has been chosen to avoid duplication.  Further, the designation of a category is not meant to be wholly inclusive or descriptive of the entirety of the rights or obligations represented by such contract.

Certain of the executory contracts and unexpired leases listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal, right to lease additional space, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, rights of way, subordination, nondisturbance, and atonement agreements, supplemental agreements,

amendments/letter agreements, title agreements, and confidentiality agreements. Such documents also are not set forth in Schedule G.

The Debtors hereby reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, document, or instrument related to a creditor's claim, to dispute the validity, status, or enforceability of any contract, agreement, or lease set forth in Schedule G, and to amend or supplement Schedule G as necessary. Inclusion of any agreement on Schedule G does not constitute an admission that such agreement is an executory contract or unexpired lease and the Debtors reserve all rights in that regard, including, without limitation, that any agreement is not executory, has expired pursuant to its terms, or was terminated prepetition.

In addition, certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings. The presence of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease. The Debtors reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on Schedule G, including the right to dispute or challenge the characterization or the structure of any transaction, or any document or instrument (including, without limitation, any intercreditor or intercompany agreement) related to a creditor's claim. Certain of the contracts, agreements, and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts or unexpired leases could not be specifically ascertained in every circumstance. In such cases, the Debtors used their best efforts to determine the correct Debtor's Schedule G on which to list such executory contract or unexpired lease.

In the ordinary course of business, the Debtors have entered into numerous contracts or agreements, both written and oral, regarding the provision of certain services on a month to month basis. To the extent such contracts or agreements constitute executory contracts, these contracts and agreements are not listed individually on Schedule G.

Certain of the executory contracts may not have been memorialized and could be subject to dispute; executory agreements that are oral in nature have not been included in Schedule G.

In the ordinary course of business, the Debtors may have entered into confidentiality agreements which, to the extent that such confidentiality agreements constitute executory contracts, are not listed individually on Schedule G.

Certain of the executory contracts and unexpired leases listed in Schedule G were assigned to, assumed by, or otherwise transferred to certain of the Debtors in connection with, among other things, acquisitions by the Debtors.

The Debtors generally have not included on Schedule G any insurance policies, the premiums for which have been prepaid. The Debtors submit that prepaid insurance policies are not executory contracts pursuant to section 365 of the Bankruptcy Code because no further payment or other material performance is required by the Debtors. Nonetheless, the Debtors recognize that in order to enjoy the benefits of continued coverage for certain claims under these policies, the Debtors may have to comply with certain non-monetary obligations, such as the provision of notice

of claims and cooperation with insurers. In the event that the Bankruptcy Court were to ever determine that any such prepaid insurance policies are executory contracts, the Debtors reserve all of their rights to amend Schedule G to include such policies, as necessary or appropriate.

In addition, Schedule G does not include rejection damage claims of the counterparties to the executory contracts and unexpired leases that have been or may be rejected, to the extent such damage claims exist.

Finally, each of the Debtors are party to a Restructuring Support Agreement with certain of their financial stakeholders (the "RSA"). The RSA is listed on each Debtor signatory's Schedule G. For a complete list of the Debtors that are party to the RSA, please review each Debtor's Schedule G.

The Debtors are still in the process of collecting the addresses of all counterparties to such executory contracts and unexpired leases. These addresses will be compiled prior to sending notice of the bar date for the filing of proofs of claim in these chapter 11 cases.

## Specific Notes Regarding Schedule H

1.    **Co-Debtors**.  The Debtors are party to various debt agreements, which were executed by multiple Debtors.  In the ordinary course of their business, the Debtors pay certain expenses on behalf of their subsidiaries. The Debtors may not have identified certain guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other agreements. Further, certain of the guarantees reflected on Schedule H may have expired or may no longer be enforceable. Thus, the Debtors reserve their rights to amend Schedule H to the extent that additional guarantees are identified, or such guarantees are discovered to have expired or become unenforceable.

In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary course of business transactions. These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties. Because such claims are contingent, disputed, and/or unliquidated, such claims have not been set forth individually on Schedule H. However, some such claims may be listed elsewhere in the Schedules and Statements.

## Specific Notes Regarding Statements

**Part 4: Payments made within 1 year before filing this case that benefited any insider.** The Debtors engage in transactions with certain companies owned by affiliates of Apollo Management Holdings, L.P. where the Debtors provide management services or oversight of such companies' books and records.  These transactions are considered affiliate arrangements and have been listed as transactions with insiders in these SOFAs and Schedules.  The Debtors may, from time to time, engage in arm's length transactions with other companies owned or controlled by affiliates of Apollo Management Holdings, L.P. to provide goods or services in the ordinary course of business.  Given the ordinary course and arm's length nature of these relationships, the Debtors have not listed such arrangements as transactions with insiders.

14

**Part 10: Off Premise Storage.**  The Debtors have excluded off premise storage for documentation retention held at multiple locations.

**Part 12: Details About Environmental Information**.  The Debtors have operations in many locations. At some locations, the Debtors no longer have any operations and may no longer have relevant records, or the records may no longer be complete or reasonably accessible or reviewable. Some individuals who once possessed responsive information are no longer employed by the Debtors. For all these reasons, it may not be possible to identify and supply the requested information for every "site" and "proceeding" literally responsive to Item 22-24. The Debtors have devoted substantial internal and external resources to identifying and providing the requested information for as many responsive sites and proceedings as reasonably possible. The Debtors may supplement or amend this response in the future. Due to the number of potentially responsive matters, the practical burdens in compiling information on inactive matters and the presumably lower relevance of information on inactive matters, information is presented only for matters that have been active within the last few years and that the Debtors do not consider to be closed. When some requested categories of information were not reasonably available for a listed "site" or "proceeding," the Debtors' response gives as much information as was reasonably available. When a site is the subject of a proceeding, settlement or order listed in the response to Item 22, the site and notices related to it are not also listed in the responses to Item 23 or 24. Similarly, sites that are listed in the response to Item 23 (sites for which the Debtors have received notice from a governmental unit) are not repeated in response to Item 24 (sites for which the Debtors have provided notice to a governmental unit). To avoid duplication, notices are not listed to the extent they refer to another notice or proceeding already identified in 22, 23 or 24. This response does not include sites or proceedings related to non-environmental laws such as occupational safety and health laws or transportation laws. The Debtors make routine reports and submissions concerning discharges resulting from normal operations consistent with regulatory requirements, such as discharge monitoring reports, toxic release inventory submissions and submissions concerning air emissions. This response is limited to those reports and submissions that identify uncontrolled releases and hazardous materials and does not purport to identify all routine reports and submissions.

**Part 13: Books, records, and financial statements.**  The Debtors routinely provide financial statements to banks, customers, suppliers, tax authorities, landlords, factors, potential investors, and other financial institutions in the ordinary course, as well as in association with its debt restructuring efforts.

US-DOCS\107895664.1

**North American Sugar Industries Incorporated**                    **Case Number:**        **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 1: | Cash and cash equivalents |
|---|---|

1.  **Does the debtor have any cash or cash equivalents?**

☑ No. Go to Part 2.

☐ Yes. Fill in the information below.

| General description | Type of account (if applicable) | Last 4 digits of account # (if applicable) | Current value of debtor's interest |
|---|---|---|---|
| 2.  **Cash on hand** 2.1 | | | |
| 3.  **Checking, savings, money market, or financial brokerage accounts (Identify all)** 3.1 | | | |
| 4.  **Other cash equivalents (Identify all)** 4.1 | | | |

5.  **Total of Part 1.**

Add lines 2 through 4. Copy the total to line 80.

**North American Sugar Industries Incorporated**                    Case Number:          **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 2: | Deposits and prepayments |
|---------|--------------------------|

6.  **Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.

☐ Yes. Fill in the information below.

| General description | Current value of debtor's interest |
|---------------------|-----------------------------------|

7.  **Deposits, including security deposits and utility deposits**
    Description, including name of holder of deposit

    7.1 _____          _____

8.  **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
    Description, including name of holder of prepayment

    8.1 _____          _____

9.  **Total of Part 2**
    Add lines 7 through 8. Copy the total to line 81.

**North American Sugar Industries Incorporated**                    **Case Number:**          **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 3: | Accounts receivable |
|---------|---------------------|

10.  **Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

| General description | Face or requested amount | Doubtful or uncollectable | Current value of debtor's interest |
|---------------------|--------------------------|---------------------------|-------------------------------------|

11.   Accounts receivable

11a. 90 days old or less: _____ - _____ = _____

11b. Over 90 days old: _____ - _____ = _____

11c. All accounts receivable: _____ - _____ = _____

12.   **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

**North American Sugar Industries Incorporated**                                    Case Number:         **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 4: | Investments |
|---------|-------------|

13.  **Does the debtor own any investments?**

☐ No. Go to Part 5.

☑ Yes. Fill in the information below.

| General description | Valuation method used for current value | Current value of debtor's interest |
|---------------------|------------------------------------------|-------------------------------------|

14.  **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1

15.  **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:

| | | |
|---|---|---|
| 15.1    INVESTMENT IN SUBS  - CUBAN-AMERICAN MERCANTILE CORPORATION (OWNERSHIP: 100.0%) | UNKNOWN | Undetermined |
| 15.2    INVESTMENT IN SUBS  - THE WEST INDIA COMPANY (OWNERSHIP: 100.0%) | UNKNOWN | Undetermined |

16.  **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1

17.  **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.

| $0 |
|----|

**North American Sugar Industries Incorporated**                                    **Case Number:**        **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

18.  **Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19.  **Raw materials** | | | | |
| 19.1 | | | | |
| 20.  **Work in progress** | | | | |
| 20.1 | | | | |
| 21.  **Finished goods, including goods held for resale** | | | | |
| 21.1 | | | | |
| 22.  **Other Inventory or supplies** | | | | |
| 22.1 | | | | |

23.  **Total of Part 5.**

Add lines 19 through 22. Copy the total to line 84.

24.  **Is any of the property listed in Part 5 perishable?**

☐ No

☐ Yes

25.  **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes.    Book Value _____    Valuation method _____    Current value _____

26.  **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No

☐ Yes

North American Sugar Industries Incorporated                    Case Number:        19-10695

## Schedule A/B: Assets — Real and Personal Property

**Part 6:**     Farming and fishing-related assets (other than titled motor vehicles and land) - detail

27.  **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

28.  **Crops—either planted or harvested**

28.1

29.  **Farm animals**
     Examples: Livestock, poultry, farm-raised fish

29.1

30.  **Farm machinery and equipment**
     (Other than titled motor vehicles)

30.1

31.  **Farm and fishing supplies, chemicals, and feed**

31.1

32.  **Other farming and fishing-related property not already listed in Part 6**

32.1

33.  **Total of Part 6**

Add lines 28 through 32. Copy the total to line 85.

34.  **Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

☐ No

☐ Yes

35.  **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes.     Book Value _____     Valuation method _____     Current value _____

36.  **Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

37.  **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

**North American Sugar Industries Incorporated**                    **Case Number:**        **19-10695**

## Schedule A/B: Assets — Real and Personal Property

**Part 7:**        Office furniture, fixtures, and equipment; and collectibles - detail

38.   **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

39.   **Office furniture**

39. 1  _____

40.   **Office fixtures**

40. 1  _____

41.   **Office equipment, including all computer equipment and communication systems equipment and software**

41. 1  _____

42.   **Collectibles**

42. 1  _____

43.   **Total of Part 7**

Add lines 39 through 42. Copy the total to line 86.

44.   **Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No

☐ Yes

45.   **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☐ No

☐ Yes

**North American Sugar Industries Incorporated**                    Case Number:          **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

46.   **Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

47.   **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

47.1 _____   _____   _____   _____

48.   **Watercraft, trailers, motors, and related accessories**

Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

48.1 _____   _____   _____   _____

49.   **Aircraft and accessories**

49.1 _____   _____   _____   _____

50.   **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

50.1 _____   _____   _____   _____

51.   **Total of Part 8**

Add lines 47 through 50. Copy the total to line 87.

52.   **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☐ Yes

53.   **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☐ No

☐ Yes

**North American Sugar Industries Incorporated**                    **Case Number:**          **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 9: | Real property - detail |
|---|---|

54.  **Does the debtor own or lease any real property?**

☑ No. Go to Part 10.

☐ Yes. Fill in the information below.

| Description and location of property<br>Include street address or other description such as<br>Assessor Parcel Number (APN), and type of property<br>(for example, acreage, factory, warehouse, apartment<br>or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|

55.  **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

55.1 _____  _____  _____  _____  _____

56.  **Total of Part 9**

Add the current value on all Question 55 lines and entries from any additional sheets. Copy the total to line 88.

57.  **Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No

☐ Yes

58.  **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

**North American Sugar Industries Incorporated**                    **Case Number:**          **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 10: | Intangibles and intellectual property - detail |
|---|---|

59.  **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

60.  **Patents, copyrights, trademarks, and trade secrets**

60.  1

61.  **Internet domain names and websites**

61.  1

62.  **Licenses, franchises, and royalties**

62.  1

63.  **Customer lists, mailing lists, or other compilations**

63.  1

64.  **Other intangibles, or intellectual property**

64.  1

65.  **Goodwill**

65.  1

66.  **Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.

67.  **Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?**

☐ No

☐ Yes

68.  **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☐ No

☐ Yes

69.  **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☐ No

☐ Yes

**North American Sugar Industries Incorporated**                Case Number:        **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form? Include all interests in executory contracts and unexpired leases not previously reported on this form.**

    ☑ No. Go to Part 12.

    ☐ Yes. Fill in the information below.

| General description | Current value of debtor's interest |
|---|---|

71. **Notes receivable**
    Description (include name of obligor)

    71.1 _____    _____

72. **Tax refunds and unused net operating losses (NOLs)**
    Description (for example, federal, state, local)

    72.1 _____    _____

73. **Interests in insurance policies or annuities**

    73.1 _____    _____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

    74.1 _____    _____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

    75.1 _____    _____

76. **Trusts, equitable or future interests in property**

    76.1 _____    _____

77. **Other property of any kind not already listed Examples: Season tickets, country club membership**
    Examples: Season tickets, country club membership

    77.1 _____    _____

**North American Sugar Industries Incorporated**                    **Case Number:**        **19-10695**

## Schedule A/B: Assets — Real and Personal Property

| Part 11: | All other assets |
|---|---|

78. **Total of Part 11**
    Add lines 71 through 77. Copy the total to line
    90.

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

    ☐ No

    ☐ Yes

North American Sugar Industries Incorporated                         Case Number:        **19-10695**

## Schedule A/B: Assets — Real and Personal Property

**Part 12:**        Summary

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property | Total of all property |
|---|---|---|---|
| 80.  Cash, cash equivalents, and financial assets. Copy line 5, Part 1. | $0 | | |
| 81.  Deposits and prepayments. Copy line 9, Part 2. | $0 | | |
| 82.  Accounts receivable. Copy line 12, Part 3. | $0 | | |
| 83.  Investments. Copy line 17, Part 4. | $0 | | |
| 84.  Inventory. Copy line 23, Part 5. | $0 | | |
| 85.  Farming and fishing-related assets. Copy line 33, Part 6. | $0 | | |
| 86.  Office furniture, fixtures, and equipment; and collectibles. Copy line 43, Part 7. | $0 | | |
| 87.  Machinery, equipment, and vehicles. Copy line 51, Part 8. | $0 | | |
| 88.  Real property. Copy line 56, Part 9. | | $0 | |
| 89.  Intangibles and intellectual property. Copy line 66, Part 10. | $0 | | |
| 90.  All other assets. Copy line 78, Part 11. | $0 | | |
| 91.  Total. Add lines 80 through 90 for each column. | a. $0 | b. $0 | |

92.  **Total of all property on Schedule A/B. Lines 91a + 91b = 92.**                                                 $0

**North American Sugar Industries Incorporated**                                         **Case Number:**    **19-10695**

## Schedule D: Creditors Who Have Claims Secured by Property

1.  **Do any creditors have claims secured by debtor's property?**

    ☑ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

    ☐ Yes. Fill in all of the information below.

### Part 1:    List Creditors Who Have Secured Claims

2.  **List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.**

| Creditor's Name and Mailing Address, E-mail Address & An Account Number | Co-Interest | Insider | Co-Debtor | Date Claim was Incurred, Property Description, Lien & Co-Interest Creditor | C  U  D | Amount of Claim | Value of Collateral |
|---|---|---|---|---|---|---|---|
| **2.** | ☐ | ☐ | ☐ | | ☐ ☐ ☐ | $0 | |
| | | | | | Total: | $0 | |

**North American Sugar Industries Incorporated**                    **Case Number:**        **19-10695**

## Schedule D: Creditors Who Have Claims Secured by Property

**Amount of Claim**

3.  **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**                    **$0**

**North American Sugar Industries Incorporated**                                    Case Number:        **19-10695**

## Schedule D: Creditors Who Have Claims Secured by Property

| Part 2: | List Others to Be Notified for a Debt Already Listed in Part 1 |
| --- | --- |

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

| Name and Mailing Address | Part 1 Line on which the Related Creditor was Listed | Last 4 Digits of Account Number for this Entity |
| --- | --- | --- |
| NONE | | |

**North American Sugar Industries Incorporated**                    **Case Number:**          **19-10695**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 1:**      **List All Creditors with PRIORITY Unsecured Claims**

1.  **Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).**

    ☑ No. Go to Part 2.

    ☐ Yes. Go to line 2.

2.  **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Offset | Total Claim | Priority Amount |
|---|---|---|---|---|---|---|---|
| **2.**      NONE | | ☐ | ☐ | ☐ | ☐ | | |
| | | | | | **Total:** | $0 | $0 |

**North American Sugar Industries Incorporated**                                    **Case Number:**          **19-10695**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 1:**    **List All Creditors with PRIORITY Unsecured Claims**

| | | |
|---|---|---|
| **Total: All Creditors with PRIORITY Unsecured Claims** | **$0** | **$0** |

**North American Sugar Industries Incorporated**                    Case Number:        **19-10695**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**      List All Creditors with NONPRIORITY Unsecured Claims

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **3.**        NONE | | ☐ | ☐ | ☐ | | ☐ | |
| | | | | | | Total: | $0 |

**North American Sugar Industries Incorporated**                    Case Number:    **19-10695**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

Total: All Creditors with NONPRIORITY Unsecured Claims                                    **$0**

**North American Sugar Industries Incorporated**                    Case Number:        **19-10695**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 3:** | **List Others to Be Notified About Unsecured Claims** |

4.    List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

| Creditor's Name, Mailing Address Including Zip Code | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
| --- | --- | --- |

**4.1**    NONE

**North American Sugar Industries Incorporated**                    Case Number:        **19-10695**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---|---|

5.    Add the amounts of priority and nonpriority unsecured claims.

<u>Total of claim amounts</u>

| 5a. | **Total claims from Part 1** | 5a. | $0 |
|---|---|---|---|
| 5b. | **Total claims from Part 2** | 5b.    **+** | $0 |
| 5c. | **Total of Parts 1 and 2** | 5c. | $0 |
| | Lines 5a + 5b = 5c. | | |

**North American Sugar Industries Incorporated**                                    **Case Number:**        **19-10695**

## Schedule G: Executory Contracts and Unexpired Leases

1.  **Does the debtor have any executory contracts or unexpired leases?**

   ☑ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

   ☐ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

2.  **List all contracts and unexpired leases**

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2.          NONE | | | ☐ | | NOT AVAILABLE |

**North American Sugar Industries Incorporated**                          **Case Number:**          **19-10695**

## Schedule G: Executory Contracts and Unexpired Leases

**TOTAL NUMBER OF CONTRACTS:  0**

| LID | Legal Entity Name | Nature of Business | ABL Facility[1] | 10.375% First Lien Notes[2] | 10.000% First Lien Notes[3] | 6.625% First Lien Notes[4] | 13.750% 1.5 Lien Notes[5] | 9.000% Second Lien Notes[6] | Borden Debentures[7] |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Hexion Holdings LLC | Holding Company | | | | | | | |
| 2 | Hexion LLC | Holding Company | X | | | | | | |
| 3 | Hexion Inc. | Operating Company | X | X | X | X | X | X | X |
| 4 | Lawter International Inc. | Non-operating Company | X | X | X | X | X | X | |
| 5 | Hexion CI Holding Company (China) LLC | Non-operating Company | X | X | X | X | X | X | |
| 6 | Hexion Nimbus Inc. | Non-operating Company | | | | | | | |
| 7 | Hexion Nimbus Asset Holdings LLC | Non-operating Company | | | | | | | |
| 8 | Hexion Deer Park LLC | Operating Company | X | X | X | X | X | X | |
| 9 | Hexion VAD LLC | Non-operating Company | | | | | | | |
| 10 | Hexion 2 US Finance Corp | Non-operating Company | | | | | | | |
| 11 | Hexion HSM Holdings LLC | Non-operating Company | | | | | | | |
| 12 | Hexion Investments Inc. | Holding Company | X | X | X | X | X | X | |
| 13 | Hexion International Inc. | Operating Company | X | X | X | X | X | X | |
| 14 | North American Sugar Industries Incorporated | Non-operating Company | | | | | | | |
| 15 | The Cuban-American Mercantile Corporation | Non-operating Company | | | | | | | |
| 16 | The West India Company | Non-operating Company | | | | | | | |
| 17 | NL Coop Holdings LLC | Holding Company | X | X | X | X | X | X | |
| 18 | Hexion Nova Scotia Finance, ULC | Non-operating Company | X | | | | | X | |

Notes:

(1) A $350 million of principal amount and letter of credit facilities (the "ABL Facility"), governed by a revolving credit agreement (the "ABL Credit Agreement") with JPMorgan Chase Bank, N.A. serving as administrative agent and the lenders party thereto. Under the ABL Facility, a first lien revolving credit facility, and related collateral documents, the Debtors guarantee all obligations (both domestic and foreign), while the Foreign Borrowers and the foreign guarantors guarantee only foreign obligations and is secured by senior liens on most of the inventory and accounts of the Debtors and certain inventory, accounts, and other assets of certain of the foreign Non-Debtor Affiliates.

(2) $560 million in aggregate principal amount of 10.375% first-priority senior secured notes due 2022 (the "10.375% First Lien Notes"), with U.S. Bank Global Corporate Trust, serving as successor trustee to Wilmington Trust, N.A. The 10.375% First Lien Notes are issued by Hexion Inc. and guaranteed by a number of its domestic subsidiaries and is secured by senior liens on the Notes Priority Collateral, see George Knight's Declaration.

(3) $315 million in aggregate principal amount of 10.000% first-priority senior secured notes due 2020 (the "10.000% First Lien Notes"), with U.S. Bank Global Corporate Trust, serving as successor trustee to Wilmington Trust, N.A. The 10.000% First Lien Notes are issued by Hexion Inc. and guaranteed by a number of its domestic subsidiaries and is secured by senior liens on the Notes Priority Collateral, see George Knight's Declaration.

(4) $1,550 million in aggregate principal amount of 6.625% first-priority senior secured notes due 2020 (the "6.625% First Lien Notes"), with U.S. Bank Global Corporate Trust, serving as successor trustee to Wilmington Trust, N.A. The 6.625% First Lien Notes are issued by Hexion Inc. and guaranteed by a number of its domestic subsidiaries and is secured by senior liens on the Notes Priority Collateral, see George Knight's Declaration.

(5) $225 million in aggregate principal amount of 13.750% senior secured notes due 2022 (the "13.750% 1.5 Lien Notes"), governed by an indenture among Hexion Inc. and a number of its domestic subsidiaries, and Wilmington Savings Fund Society, FSB, as successor trustee to Wilmington Trust Company. The 13.750% 1.5 Lien Notes are issued by Hexion Inc. and guaranteed by a number of its domestic subsidiaries and is secured by liens on the Notes Collateral that are junior to the liens in such collateral securing the First Lien Notes and the ABL, see George Knight's Declaration.

(6) $574 million in aggregate principal amount of 9.000% second-priority senior secured notes due 2020 (the "9.000% Second Lien Notes"), governed by an indenture among Hexion Inc. and a number of its domestic subsidiaries, and U.S. Bank Global Corporate Trust, serving as successor trustee to Wilmington Trust Company. The 9.000% Second Lien Notes are issued by Hexion Inc. and Hexion Nova Scotia Finance, ULC and guaranteed by a number of its domestic subsidiaries and is secured by liens on the Notes Collateral that are junior to the liens in such collateral securing the First Lien Notes, the ABL, and the 1.5 Lien Notes, see George Knight's Declaration.

(7) $74 million and $189 million principal amount of 9.200% and 7.875% Borden Debentures due 2021 and 2023, respectively, (the "Borden Debentures"), governed by an indenture among Hexion Inc. and BNY Mellon Corporate Trust, as administrative agent and the lenders party thereto. The Borden Debentures are issued by Hexion Inc. and are unsecured obligations and contain a negative pledge on the granting of liens on, or taking certain other actions in respect of, any "Principle Property", see George Knight's Declaration.

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor Name: | North American Sugar Industries Incorporated |
| United States Bankruptcy Court for the: | Delaware |
| Case Number (if known): | 19-10695 |

☐ Check if this is an amended filing

## Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

12/15

---

| Part 1: | Summary of Assets |
|---|---|

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**

   Copy line 88 from Schedule A/B ........................................................................... $0

   1b. **Total personal property:**

   Copy line 91A from Schedule A/B ........................................................................ $0

   **+**

   1c. **Total of all property:**

   Copy line 92 from Schedule A/B ........................................................................ $0

---

| Part 2: | Summary of Liabilities |
|---|---|

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)

   Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D ............................ $0

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**

   Copy the total claims from Part 1 from line 6a of Schedule E/F ................................................. $0

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**

   Copy the total of the amount of claims from Part 2 from line 6b of Schedule E/F ........................................ $0

   **+**

4. **Total liabilities**

   Lines 2 + 3a + 3b ........................................................................................ $0

Fill in this information to identify the case and this filing:

Debtor Name:    North American Sugar Industries Incorporated

United States Bankruptcy Court for the:    Delaware

Case Number (if known):    19-10695

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents.  This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

Warning -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and Signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

[X] Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)

[X] Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)

[X] Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)

[X] Schedule G:  Executory Contracts and Unexpired Leases (Official Form 206G)

[X] Schedule H: Codebtors (Official Form (206H)

[X] Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)

[ ] Amended Schedule _____

[ ] Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:    June 6, 2019          Signature:    /s/ George F. Knight, III

George F. Knight, III, Executive Vice President and Chief Financial Officer

**Name and Title**